SUPERIOR COURT
OF THE

JOHN A. PARKINS, JR.
JUDGE

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE: (302) 255-2584

April 11, 2017

Mark A. Denney, Jr., DAG
John W. Downs, DAG
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, Delaware 19801

Natalie S. Woloshin, Esquire
Woloshin Lynch & Natalie, P.A.
3200 Concord Pike
P.O. Box 7329
Wilmington, Delaware 19803

Cleon L. Cauley, Sr., Esquire
The Cauley Firm
One Customs House
704 King Street, Suite 600
Wilmington, Delaware 19801

Re:  State of Delaware
v. Jacquez Robinson
ID Nos. 1411017691A&B

Dear Counsel:

The oft-delayed trial in this murder case is scheduled to begin on July 11, 2017.  On April 3, Defendant moved to suppress (a) a drawing he made which was seized from his prison cell and (b) his statement made during a prison-intake interview. The State has not had an opportunity to respond to this recently

filed motion. Because the trial date is rapidly approaching, the court has taken it upon itself to research the issues presented in these motions with the goal of perhaps reducing the time needed to resolve them. It finds that the motion to exclude the drawing is frivolous and that motion will be denied without requiring a response from the State. It further finds that the motion to exclude the defendant's statement presents narrow issues which require additional development.

### *(a) The drawing seized from Defendant's cell*

Prison officials seized a drawing from Defendant's cell which appears to be gang-related symbols and mottos. Defendant's motion to suppress that drawing is without merit because Defendant had no reasonable expectation of privacy in his cell.

It goes without saying that not all seizures of a person's property implicate the Fourth Amendment. Rather the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded

place."[1] The United States Supreme Court has held that, for purposes of the Fourth Amendment, a prisoner has no expectation of privacy in his cell. In *Hudson v. Palmer* it wrote:

> Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.[2]

Defendant cites this court's opinion in *State v. Ashley*[3] for the proposition that this court "insinuated" that warrantless searches of a cell must be routine or required by some exigency. It is true that this court expressly found that Ashley had "standing" to assert a Fourth Amendment claim. More than thirty years ago the United States Supreme Court expressly abandoned "standing" terminology in its Fourth Amendment vocabulary, holding that the determination of whether a defendant is asserting his own Fourth Amendment right (as opposed to one belonging to another

---

[1] *Rakas v. Illinois*, 439 U.S. 128, 143 (1979); *Minnesota v. Carter*, 525 U.S. 83 (1998)(same).
[2] *Hudson v. Palmer*, 468 U.S. 517, 525 (1984).
[3] 1998 WL 110149 (Del. Super. Jan. 26, 1998).

person) is "more properly placed within the purview of substantive Fourth Amendment law than within that of standing."[4] The appropriate inquiry is whether the defendant "personally has an expectation of privacy in the place searched, and that his expectation is reasonable."[5] This court's finding in *Ashley* that the defendant had standing therefore suggests that it found the defendant had some expectation of privacy in his cell. However, this court did not cite *Hudson v. Palmer* and gave no indication it was even made aware of that opinion by the litigants. Importantly, none of the cases cited in *Ashley* post-dated *Hudson v. Palmer.* To the extent, therefore, that *Ashley* may be read as suggesting a prisoner may have a constitutional expectation of privacy in his cell, that holding is no longer good law and the court will not follow it. Defendant's motion to suppress the drawing seized from his cell is therefore **DENIED**.

---

[4]  *State v. Manuel*, 2009 WL 1228573, at *3 (Del. Super. May 5, 2009) (*citing Rakas v. Illinois*, 439 U.S. 128, 140 (1979)).

[5]  *Id.* (*citing Minnesota v. Carter,* 525 U.S. 83, 88 (1998)).

*(b) Defendant's statements during his admission interview*

Defendant told a Department of Correction employee that he was a member of the TMG gang and had been since its inception. The record is undeveloped, but for the purpose of context the court notes that the information is contained in a form entitled "Security Threat Group/Offender Screening Work Sheet." That sheet is a pre-printed form with questions such as:

- Are you a member of a gang?

- Do you anticipate having any problems at this institution with any member or suspected member of a gang?

- Have you ever been involved in a disturbance with a large group of inmates at another institution?

On the surface, at least, it appears this sheet and the interview were used to determine if Defendant was a member of a gang and, if so, whether that membership posed any security risks to the Defendant or other inmates.

Defendant contends that he was entitled to be advised of his *Miranda* rights before the officer conducted this interview and completed the form. *Miranda,* of course, is a prophylactic rule which applies to custodial interrogations. Defendant asserts,

without citation to pertinent authority, that "defendant was clearly in custody as he was in jail." It may be that this was a custodial interrogation, but that is not self-evident from the fact that Defendant was incarcerated. According to the United States Supreme Court:

> [S]tandard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation. Thus, service of a term of imprisonment, without more, is not enough to constitute *Miranda* custody.[6]

Whether Defendant was "in custody" will need to be developed in future briefing and proceedings.

Aside from the question whether Defendant was "in custody," there is another *Miranda* issue which needs to be addressed. Many courts, including the Third Circuit Court of Appeals, have recognized a routine booking exception to *Miranda.*[7] Under this exception "[i]t is well established that *Miranda* does not apply to biographical data necessary to complete booking or pretrial services."[8] Although there is a split

---

[6] *Howes v. Fields*, 565 U.S. 499, 512 (2012).

[7] *United States v. Bishop*, 66 F.3d 569, 572 n.2 (3d. Cir. 1995) ("we join the other courts of appeals that have addressed the issue and recognize that there is a 'routine booking exception' to the requirements of *Miranda v. Arizona*").

[8] *United States v. Horton*, 873 F.2d 180, 181 n.2 (8th Cir. 1989).

of authorities, many jurisdictions have found that this exception applies to questions about gang affiliation. For example, a few months ago, a North Carolina federal district court wrote:

> Here, the government asserts that officer Smith's questions to defendant were part of a standard booking procedure aimed, in part, at addressing safety concerns. This is in keeping with the rationale justifying other courts' application of the "routine booking question" exception to questions about gang affiliation. See, e.g., Washington, 462 F.3d at 1133 ("[A]gents routinely obtain gang moniker and gang affiliation information ... in order to ensure prisoner safety. The question regarding [defendant]'s gang moniker therefore was a routine booking question."). Accordingly, where defendant's admission of his gang affiliation falls under the "routine booking question" exception to Miranda, the court denies the relief requested.[9]

There are opinions which cut the other way. For example, the California Supreme Court has held that "questions about gang affiliation exceed [the booking exception]."[10]

Because the present record is inadequate, the court will **DEFER** a ruling on the motion to exclude the statements made during the screening sheet interview. The parties will submit simultaneous briefs on the applicability the so-called booking exception and, if Defendant desires an evidentiary hearing, he

---

[9] *United States v. Sanmartin*, 2016 WL 4506990, at *2 (E.D.N.C. Aug. 26, 2016); *accord United States v. Edwards,* 563 F. Supp. 2d 977 (D. Minn. 2008).
[10] *People v. Elizade*, 351 P.3d 1010, 1018 (Cal. 2015).

should provide the court with a letter explaining specifically why one is necessary. The court will conduct a teleconference to schedule these submissions. Counsel is advised that the court must impose a tight schedule in order to ensure timely resolution before trial.

It is **SO ORDERED**.

Very truly yours,

John A. Parkins, Jr.

oc: Prothonotary